May it please the court, I'm Randall Frye. On behalf of Baker Hughes with me at council table is Stuart Peck. And in answer to your question, before this case, never. What happened to Baker Hughes in the courts below is exactly what 1111B is in the code to prevent. There was a crammed down plan of reorganization here and Baker Hughes was cashed out. When that happened, Baker Hughes was not able to recover or foreclose on its collateral because there was no sale at which it could credit bid and it was not allowed to make an 1111B election, which would enable it to receive payment of its loan. Let me ask you a preliminary question. Does the 1111B election for Baker Hughes turn on whether you were a recourse, whether it had recourse? Because the briefs say Baker Hughes had recourse. No, it does not turn on that, Your Honor. 1111B, too, allows a recourse creditor to make the election. And when that election is made, the claim is treated as a secured claim up to the full extent that the claim is secured. So the 1111B, which is the 1111B1B2, and it says, a class of claims may not elect application of 1111B2 if the holder of a claim of such class has recourse against the debtor and such property is sold under 363 or is to be Okay. In the first level, 1111B1 allows or provides that a nonrecourse secured creditor has his claim treated as a recourse secured claim. Correct. That's not an issue here. The second level, 1111B2 provides that when a secured creditor, nonrecourse, makes his election, then he is allowed to make the claim or his claim is secured to the extent the full claim is allowed. That election under 1111B2 is not available for a recourse secured creditor if the property is sold under 363 or is sold under the plan. And those words sold under the plan have been interpreted by the courts to require that the secured creditor be allowed a credit bid, just like in 363. So bottom line is that if the secured creditor does not have the right to credit bid, the secured creditor gets to make the 1111B2 election, which allows his secured claim to be treated as a secured claim up to the full amount of the claim. As an example, if a secured creditor has a full claim worth $1,000 and the value of the collateral is only $200, then the secured creditor has a is ordinarily treated as an unsecured deficiency claim and the secured creditor gets to vote in the class of unsecured creditors. If the 1111B2 election is made, then that $800 unsecured claim is treated as a secured claim and the full $1,000, which is the value of the collateral plus that otherwise unsecured deficiency claim, is treated as a secured claim. And the secured creditor gets payment on that claim before any payments get made to junior creditors, in other words, the unsecured creditors. Can you help me with the premise of your argument that Ed Hughes was denied the right to credit bid? Certainly. It appears that it could be argued that the confirmation order stated that the plan called to sell the property, but also subject to the 362K, so there was an opportunity for credit bid and it would be barred by Friday's due conduct in arguing that there was not an opportunity. And that to the extent it doesn't apply, then you could have objected to the plan for that very reason, because it doesn't actually call for credit bidding, and since you didn't object to the plan from the confirmation, you would likewise be barred by Friday's due conduct. Can you get me past the premise of your argument? Yes. There are at least three reasons why this plan and confirmation order did not allow Baker Hughes to credit bid. The first are the express words of the plan and the confirmation order. Those express words required the bulk sale of all of these assets to Scott Oil, a specifically named purchaser, for $3.4 million all in cash. That's not credit bidding. Credit bidding allows the secured creditor to bid in or credit bid the amount of his lien for his specific collateral. Doesn't it say subject to 11 U.S.C. or 362K? That does, Your Honor. But there are cases which say that the 222 Liberty case, which we cited, provided that the property was to be sold to a named purchaser, a Mr. Wald, and the court said that that did not allow credit bidding for the secured creditor, a No. But there is a case that did. And that case is the Western Real Estate case. In the Western Real Estate case, the plan provided that the property was to be sold pursuant to Section 363K. There was no other specific provision dealing with the sale of the plan or sale of the property. The court said that that did not provide for credit bidding. Here, we have additional specific provisions, and those provisions are for a bulk sale of assets to Scott Oil for $3.4 million all in cash. Those provisions specifically, in effect, deny the right to credit bid. For example, in the Supreme Court's Radlax opinion, the Supreme Court said that where the secured creditor is going to be required to come out of pocket with cash, you don't have credit bidding. And Baker Hughes would have been forced to come out of pocket with cash in this situation if it wanted to buy its collateral because that collateral was being sold with all of the other assets for $3.4 million. If you have, to take an example, a sale of 100 properties for $100 million, and the secured creditor has his particular collateral, and it has a lien of $1 million, the secured creditor ought to be able to recover his specific collateral by credit bidding for $1 million. He doesn't have to buy all of the other 99 properties and come out of pocket with $99 million cash. That's not credit bidding. Is your best authority for the proposition that you did not have the right to credit bidding, even though the plan specifically referenced 363K, this Western real estate fund out of Western District of Oklahoma? Is that your very best authority for that proposition? That's authority for the one reason, the express language of the sale did not allow credit is that under this court's opinion in the CHS versus Plattman case, the reference to 363K in the confirmation order and to 363 in the plan is just erroneous. The references to 363K in the confirmation order and to 363 in the plan are erroneous references. So the plain language which would have given you this right was just stray, was a stray comment in the plan? Under this court's opinion in the CHS versus Plattman case, that is correct. And it said that this, in this context, that that was erroneous? Not this context. In that case involved the sale of litigious rights under Louisiana law. Okay, if you know that you're correct and that the plan did not call for it, just assume that argument, even though it says 363K, it did not call for it, why then are you not bound because you failed to object to the plan confirmation for that reason? We weren't required to object. We had a valid 1111B election on file. It was valid until any objection to it was heard and ruled on by the district court. And because we had a valid election and since we didn't have the right to credit bid, we didn't have to object to the plan. We were fine with the plan and confirmation order going forward and having the bulk sale of assets because we had a valid 1111B election. When this plan got proposed, Baker Hughes filed its 1111B election. The debtor, and Scott Oils, the purchaser, had the onus at that point, if they did not like the 1111B election, to change it and specifically provide for credit bidding. The code gives a secured creditor, if the secured creditor is not allowed a credit bid, the choice of demanding the right to credit bid under RADLAX or making an 1111B election. That's how its pre-petition bargain is preserved. But here, when Baker Hughes exercised its choice and made its election, if Scott Oils and the debtor did not like that, they then had the choice to specifically provide for credit bidding in the plan and take that election away from Baker Hughes. But they didn't do that. For their own business reasons, they decided they were better off selling these specific assets to Scott Oils. The debtor obviously thought that it would make more money by transferring the physical assets to Scott Oils in the sale rather than giving Baker Hughes the opportunity to credit bid and take the assets back themselves. It's significant, is it not, that you had already filed a section 1111B election at the court before the plan was even proposed? The plan had been proposed, I believe, Your Honor. The disclosure statement was filed and the election was filed in response to the disclosure statement. The plan was proposed. But anyway, the election, you had it on file. It was not untimely.  So in response to any waiver argument, it could be made that it was the trustee's obligation to adjust the plan in accordance with the election. That's exactly right. It was the trustee's obligation. It was their opportunity. But for their own business reasons, they didn't want to do that. They wanted to sell the assets themselves to Scott Oils. Okay, you have time for rebuttal. Thank you. Good morning. May it please the Court. My name is Julian Vosick, and I'm here representing the appellee, Harvey Morton, who is the trustee of the R.L. Atkins Corporation Liquidating Trust. In response to your question, Judge Jones, I've never litigated Section 1111B. Now I'd like to discuss two issues. First, the plain language of Section 1111B, and second, Baker Hughes' contention that it was not allowed to credit bid. The plain language of Section 1111B1B2 prohibits Baker Hughes' election. It provides a class of claims may not elect application of Paragraph 2 of this subsection if the holder of a claim of such class has recourse against the debtor on account of such claim and such property is sold under Section 363 of this title or is to be sold under the plan. So under the plain language of this provision, the creditor cannot make the election if it has recourse and if its property is sold. No, that's wrong. There would be no election if, quote, the property is sold is the only condition that invalidates the election. Have you read Collier on bankruptcy on this regard to this section? I have, Your Honor. It's been since early on in the briefing. Well, I read it in the last couple of days. And Collier on bankruptcy points out that this 1111B election was an innovation in the bankruptcy code, the purpose of which was to provide protection to the secured creditor against the risk of judicial undervaluation of the asset. I don't disagree with that at all, Your Honor. Okay. And when you do bulk sales of secured assets at the fire sale the bankruptcy typically involves, why isn't it clearly the purpose of the 1111B election to protect the secured creditor, which is who has a constitutional right to have his lien protected? Well, I think, Your Honor, that 1111B is meant to protect a secured creditor in the event the collateral is retained by the debtor in a plan of reorganization. No, sir. That is clearly not the only case in which 1111B2 exists. I take that. Let's write an opinion like that and take it up to the Supreme Court because that's not right. Well, Your Honor, I only say that because the language of Section 1111B1B2 says and such property is sold. I think the creditor's, the secured creditor's remedy when the property is sold is to credit bid, which it has a statutory right to do under Section 363K. I'm reading from the first call your own bankruptcy paragraph of 1111.033C. The election can be utilized to prevent an attempted cashout under Section 1124 for an amount less than the value of the entire claim of the undersecured or originally nonrecourse creditor. Your Honor, I don't think there is a cashout if the creditor has the opportunity to credit bid. He didn't. The creditor didn't have that opportunity. Well, Your Honor, I will discuss that, and I respectfully disagree. I think, again, the creditor had a statutory right to credit bid but made no attempt to exercise that right. He filed actually what it says here is that the Section 1111B does not specify when the 1111B2 election must be made. Now, in this case, it was made well before the confirmation of the plan. It's on file in the court records. What was your client, your reaction? Did you ever see that document before you went to confirmation? Your Honor, I think it's important to distinguish here. At the time, our client was the Chapter 11 trustee, but our client did not propose the plan. The plan was proposed by a creditor who actually purchased a claim in order to propose the plan and purchase the assets. I was not involved in the plan confirmation process. This isn't a personal challenge. I'm just trying to figure it out because, obviously, I mean it seems to me that it slipped through the crack that Scott Oil perhaps should have seen it. But since your client was going to get the benefit of the cash out of the sale, it seems to me someone should have been looking at the bankruptcy records day by day. Well, Your Honor, it's in the record. I don't know when Scott Oil filed their response. They did file a response to the 1111B election. I can't tell you standing right here whether it was before or after confirmation. No, but what I'm saying is that the parties, everyone in the bankruptcy was placed on notice of the 1111B election before confirmation. It might have been after the plan was filed that Mr. Friday was trying to tell us that. But nevertheless, I don't think there's any dispute that it was in the court records before the confirmation hearing. That's right. And then, for some reason, I asked a bankruptcy judge friend of mine if he had ever had a litigated 1111B2 case, and he said no. So, I mean, this is very novel territory, and it's no criticism of the bankruptcy court here that the bankruptcy court allowed the litigation on this election to occur after confirmation. I understand, Your Honor. But they stood by and did nothing during confirmation. They didn't attempt to credit it. They didn't say, remember I had this. They just let it all play out. Is that right? That's my understanding of what happened, Your Honor. And, again, I think this is a statutory right that cannot be denied under the Supreme Court's holding. It says subject to the K credit bid right. Doesn't the plan specifically give that right? I believe the plan says that the sale is being made pursuant to Section 363. The confirmation order says that the sale was conducted with the K in the confirmation plan. Yes, in the confirmation plan. And we should assume that the court meant what it said in the order. I think that's right, Your Honor. Well, then, if that were the case, then the sale couldn't go through without allowing them to credit bid. But that's another matter. The treatment of Class 9 in the plan is in paragraph 5.9B, and that's a cram down, right? It is, yes. Clearly a cram down. And that means that they are secured to the extent of the value of its interest in the debtor's property. And that may have been proposed by Scott Oil, clearly, and Scott Oil was not aware that the 1111B election was on file, I suppose. Well, they were. They opposed it before the judge. They had an argument on it. And Scott Oil was represented and objected to the 1111 for the reason you're objecting to it. That is right. And, again, I can't tell you standing here right now whether that objection was filed before or after confirmation. I think it was before. Are you a bankruptcy lawyer? Yes, ma'am. Okay. Is it not correct that if you are a secured creditor in bankruptcy and the debtor identifies your secured claim in the schedules, you don't even have to have a file, a proof of claim, in order for your lien to ride through bankruptcy? I believe that is correct. And that's because the Constitution protects lien holders' rights. Yes. But, again, Your Honor, I think what it all comes down to is this contention that they weren't allowed to credit bid. They didn't try. I mean this plan is called the Second Amended Plan of Reorganization. It's modified. It was modified and restated several times based on objections that raised the purchase price, that changed the terms of— But now what you're effectively trying to say is that under the usual litigation rules, they are waiving the statutory right in 1111B2, the credit bid right that is referred to in RABLAX, and their constitutional rights. Well, Your Honor, I think they waived the right to credit bid. They said they didn't waive— They had the right. Yes, and they didn't exercise it. Exactly, yes. But how would they have done that in the context of this plan? They should have objected to confirmation. If they truly believed they weren't allowed to credit bid, they should have objected to confirmation. But if they had—just a second. If they had the right to an 1111B election, they didn't need to credit bid. Your Honor, I go back to the plain language of the exception to the election, which says you cannot make the election if you have recourse and if your property is sold under the plan. There's no dispute that both of those are true here. But 363 sold—he says that sold under the plan means subject to the right to credit bid. But that's an inherent part of it because otherwise you sell a global—you can't do a sale like this, right? How would they have done it? Suppose they had come in at the confirmation hearing and said we insist on credit bidding. And we insist on our 1111B election. The plan allocates the purchase price to every oil and gas lease and well that was sold. So they know how much was being paid for each piece of their collateral. And, in fact, their secured claim was being satisfied in full with respect to four of the five. That's correct, but it's still a $375,000 claim and a $75,000 lien, right? That's right, Your Honor. But I think the bankruptcy court said in its opinion that the right to credit bid was unavoidable if they had tried to exercise it. So how exactly it would have happened, I mean it could have potentially happened different ways. They never tried to exercise it. The bankruptcy court was aware and spoke about their right to credit bid and wrote about their right to credit bid. But they didn't ever try to exercise it before the bankruptcy court. Isn't that correct? That's right. And, in fact, the plan could not have been confirmed if they didn't have the right to credit bid. Under the Supreme Court's decision in Red Locks. That's right, Your Honor. And so the plan had the right, the plan decided the right, the confirmation specifically referred to the right, and there was no attempt ever to credit bid. That's right. The plan doesn't refer to the right to credit bid. Only the confirmation order refers to the right to credit bid, correct? The plan refers to Section 363 generally, which includes Section 363K. But, yes, every plan always refers to 363, and that has a bunch of provisions and that, you know, that. That's right, Your Honor. That's not really putting them on notice. But the bankruptcy court did explain that any such sale carried with it the affected creditor's right to credit bid. I think so, Your Honor. Again, there's a statutory right to credit bid, but it's also to keep in mind I don't think this right is absolute, that the statute, Section 363, contains the typical unless the court orders otherwise language. Now I don't think there's a lot of case law where that has actually happened. But the Supreme Court in Red Lax did observe that the lower court in that case did not order otherwise. So the plan in that case could not be confirmed. I mean, well, that was a cram down. Yeah, that was a – you know, factually it's somewhat different. But what – so you're saying the fact that they filed an 1111B election is meaningless. Because, again, Collier says that there's no requirement of timing. And it was timely. Yes, Your Honor. I don't dispute that it was timely. But it was waived. Well, I don't know that waived is exactly the right word. I think that under the plain language of the statute they just weren't entitled to make that election. They were required to attempt to enforce their credit bidding rights. But the whole point of the code is it gives secured creditors. I understand what you're saying statutorily in terms of 363 or under the plan. But you are, in effect, trying to make the 1111B election meaningless. Because every time you sell under assets, you're either selling them under a plan or you're selling them under 363. And when there's a valid election on file, that notifies the debtor that we are insisting on treating our secured claim as if fully secured by the collateral. That's right, Your Honor, and my argument is a textual argument. But, again, I think the language expressly prohibits the election when the collateral is sold. It doesn't say credit bidding anywhere in Section 1111. So you're just totally wrong on that. I'm sorry, Your Honor, it doesn't. Because the discussion in Collier's, I mean, functionally there's very little difference between 1111B and credit bidding. Well, in this case there's a huge difference. Well, in this case there's a difference. 1111B2, rather. Yes. Counsel, I think we've got a happy difference of opinion about what Collier says. Collier, of course, made that statement, and that is the objective. But I read Collier to say that the principal undertaking with 1111 was to protect the secured creditor where the collateral is going to be kept by the debtor after the plan is consummated. That's right, Your Honor. That's the overriding objective of 1111. And there are cases cited in our brief that say that. And, again, I think credit bidding and the election are two alternative ways to protect the secured creditor's interest in two different situations. On one hand, when the collateral is kept by the debtor pursuant to a plan, and on the other hand, when the collateral is sold. Now, finally, I would like to just address the contention that, let's see, on page 40 of Baker Hughes' brief, they make this statement. The plan must contain specific provisions recognizing the secured creditor's right to credit bid for its collateral and procedures to affect that right. Now, conspicuously absent from the space following this sentence is any kind of citation. And, in fact, there is no such requirement in the Bankruptcy Code. Section 363 governs sales. It doesn't say that a plan has to provide detailed credit bidding procedures. Selection 1124 governs the contents of a plan, and it doesn't say it. And Section 1129 governs confirmation of a plan, and it doesn't say it. Again, this is a statutory right that cannot be taken away unilaterally by a debtor. So even if the plan said no credit bidding, I think they still have an obligation to object. Did Baker Hughes do anything at the time that the confirmation order was provided that contained a statement that the sale was subject to credit bidding? Did they take any action to try to get the confirmation order to be refused or revised? No, Your Honor, they did not. In fact, I don't think they were present at the confirmation hearing. It's not completely clear from the record because there are only two days' worth of transcript, and I think there were four days of hearings. So why is not the confirmation order raised due to clause? Well, I think it is, Your Honor. I mean there are cases that say, and they're cited in our brief, that issues that could have been raised in connection with confirmation must be raised in connection with confirmation. And finally, Your Honor, I'd just briefly like to address the contention that the reference in the confirmation order to Section 363 is inconsistent with the other provisions providing that the sale is to Scott Oils for however many millions of dollars. I don't think they're inconsistent at all. Again, these documents would read differently if Baker Hughes had objected to confirmation. These documents should have read differently because Baker Hughes did say we're exercising an 1111B2 election. That may be true, Your Honor. But they didn't complain when the documents didn't read differently, did they? No, not that I'm aware of. But it says in the next sentence, before the one that I read you before, the reason for the inclusion of the exception in 1111B1B2 is that a secured creditor has the opportunity to protect its position. It may bid its debt at the sale of the collateral and recover the collateral. This ability gives it the benefit of its bargain and requires no special protection. I mean, again, Your Honor, I don't disagree with that, but I think that's kind of what I'm saying. Well, it's not a question of what – I mean, it seems to me that the way in which this sale was structured was that they could not credit bid because Scott is saying take it or leave it, cram down. They could not credit bid one well when the purchaser is going to buy 50 wells. Well, I mean, I don't necessarily agree with that, Your Honor. I mean, we don't know what would have happened because they didn't try. I mean, again, the purchase price for each item was set out. They could have showed up and said we'll give however much more, and I don't know of any reason why Scott Oils wouldn't have said fine, you can have that particular lease or well. Or what would even be better for everyone involved is if Scott Oils came up higher in price on that particular well, increasing the purchase price, which would benefit creditors. All right. Thank you, Your Honor. Thank you. Mr. Friday. Mr. Friday, what you're asking the court to do is to remand it to the bankruptcy court. What will you propose to the bankruptcy court? We will ask to be paid the amount that we're due under our full claim. You'll be asked to be paid what? The full amount due under the claim. By whom? By the trustee. Oh, the trustee has to pay now. I'm sorry? The trustee has to pay? He's liable? Yes. When the plan was consummated, went into effect, the liquidating trustee, who is here today, was substituted for the debtor. And the claim would be against the debtor and therefore the liquidating trustee. So he's liable even though you neither objected to or appealed from the confirmation order? Right. What we're appealing from is the disallowance of the 1111B claim. And Judge Elrod, you asked several times about this statement that the bankruptcy court made in its order saying that Baker Hughes had the right to credit bid but chose not to exercise it. With all due respect to the bankruptcy court, that statement that Baker Hughes had the right to credit bid is wrong, and Baker Hughes was not required to try to credit bid. The statement is wrong because of the cases cited, 222 Liberty, California Hancock, Western Real Estate. It's wrong in view of the express language in the plan and confirmation order directing the bulk sale. Subject to the pay rights. And the argument is that when the court says that, that becomes race judicata on whether or not there's a right to credit bid. And you raised the race judicata issue earlier, and I didn't get a chance to deal with that, but this confirmation order is not race judicata for this reason. The confirmation order says that the sale is under 363K. 363K is what gives you credit bidding rights. The other express language says we're having a bulk sale to a name purchaser for cash. That's not credit bidding. You've got directly inconsistent statements in the confirmation order, and we cited cases. It's not inconsistent because you could do that subject to the right to credit bid, but somebody needs to step up and act on it. I think as Judge Jones said, how do you do that? You've got an express statement in the confirmation order that directs this sale to be a bulk sale for cash. There is no ability for somebody to come in and say I want to buy my individual collateral and I want to credit bid for it. The trustee implementing the provisions of that confirmation order would say I'm directed by this confirmation order to sell all of these assets to Scott Oils for $3.4 million cash. I can't. You can't credit bid a bulk sale. You just can't. You can't credit bid a bulk sale. The specific of the credit bid comes in over the bulk sale if someone elects the credit bid. That's how you reconcile that. I don't think that can be fairly done. I just don't see that that can be fairly done. The reason we didn't have to do that is because we had the valid 1111B election filed. It was valid until a later hearing to decide whether or not it would be overruled. Let me ask you though, why didn't Baker Hughes follow that up with an objection to the plan? I know the company voted against the plan. Any objection to the plan would have been we don't have the right to credit bid. We are exercising our RADLAX rights, but we didn't need to do that. The secured creditor gets a choice between demanding the rights under RADLAX to credit bid and making his 1111B election. That is the secured creditor's choice. We had decided that it was better for us to exercise the 1111B election. That enabled this debtor to sell all of these assets to Scott Oils, which they obviously wanted to do. rather than giving Baker Hughes' specific collateral back to it. Judge Elrod asked the Trustees Council whether the plan could not be confirmed without the right to credit bid in it. That's an incorrect statement of the law. Plans can be confirmed without the right to credit bid. It happens all the time where the underlying assets are sold in bulk. That's true, but RADLAX does not take 1111B and its election out of the bankruptcy code. RADLAX only says that if a secured creditor wants the right to credit bid, that request by the secured creditor has to be honored. Are you saying we didn't have the statutory right? We had the right to demand the ability to credit bid. We also had the right to demand an 1111B election. If we had demanded the right to credit bid, the district court would have been required to grant us that right. In that situation, the underlying assets would not have been transferable to the buyer, which is what they wanted to do here. We were okay with that because we had our 1111B election. If you're saying the only thing the secured creditor can do is demand the right to credit bid under RADLAX, and that has to be in the plan, you've written 1111B out of the code, it's meaningless, and Judge Jones' opinion in the Greystone case says 1111B is not to be rendered meaningless. That's the result. Thank you. Thank you.